IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN DOE, individually and on behalf
of all others similarly situated,

        Plaintiff,                      OPINION AND ORDER

v.

                                               23-cv-694-wmc

GUNDERSEN LUTHERAN HEALTH
SYSTEM, INC. and DOES 1-20,

        Defendants.

---

In this putative class action, plaintiff John Doe claims that defendants Gundersen Lutheran Health System, Inc., as well as Does 1-20, allowed the use of tracking technologies in Gundersen's patient portal website to transmit personally identifiable information and protected health information to third parties without patients' consent in violation of their statutory and common law medical privacy rights. Doe originally filed this action in the Circuit Court of La Crosse County on September 7, 2023, but Gundersen removed it to federal district court under 28 U.S.C. § 1442(a)(1), commonly referred to as the "federal officer removal statute." For the following reasons, the court will grant Doe's motion and remand this case to the Circuit Court of La Crosse County.

BACKGROUND[1]

Gundersen is a health care provider with its principal place of business in La Crosse, Wisconsin, that maintains an online patient portal called "MyChart" accessible through its website, gundersenhealth.org. Gundersen's patients can access medical records and test

---

[1] This background is taken from plaintiff's state court complaint, defendant's notice of removal, and the parties' briefing of the motion to remand.

results, make appointments, and engage in many other tasks online via their personal MyChart account.  Doe, a Wisconsin resident, has obtained medical services at Gundersen and uses his MyChart account to access his medical records, bills, and test results.

Doe alleges that Gundersen has integrated source code into its websites from third parties, including Google, referred to as "Google Analytics," and Facebook, referred to as "Facebook Pixel."  These "custom analytics scripts" allegedly allow for the transmission of patients' personally identifiable information, including medical and health-related information, and communications to third parties.  Doe further alleges that he and other patients did not know about or agree to the disclosure of this information to Facebook and Google, nor to any other third party.

Based on these alleged facts, Doe asserts seven state and common law claims against defendants on behalf of himself and the putative class:  (1) violation of Wisconsin's Confidentiality of Patient Health Care Records law; (2) invasion of privacy; (3) breach of implied contract; (4) breach of fiduciary duty; (5) deceptive trade practice; (6) violation of Wisconsin's statutory prohibition on the intentional interception of wire, electronic or oral communications; and (7) trespass to chattels.

In its notice of removal, Gundersen asserts that the federal officer removal statute applies because this lawsuit challenges the actions Gundersen took to participate in the "Meaningful Use Program," a voluntary federal program that gives incentive payments to eligible healthcare providers for facilitating patient online access to health records.[2]  As support, Gundersen describes the establishment of the office of the National Health

---

[2] The Meaningful Use Program is now known as the Promoting Interoperability Program.

Information Technology Coordinator, the coordinator's decision to make online access to health care records a national priority, and, to that end, the creation of the Meaningful Use Program. Gundersen further asserts that the program "aims to increase patient's 'meaningful use' and engagement with electronic health records" by incentivizing "providers to create interoperable patient portals that allow users to communicate directly with their providers and immediately access (or transfer) their medical records." (Dkt. #1 at ¶¶ 31, 33.) Moreover, providers like Gundersen who reach "certain levels of engagement with electronic health record use through the patient portal" receive incentive payments. (*Id.* at ¶ 37.) Thus, because Gundersen is "helping the government produce the nationwide, interoperable information technology infrastructure for health information," and that the government "is incentivizing, regulating, monitoring, and supervising" its actions in the program (*id.* at ¶¶ 46-47), Gundersen argues that removal is appropriate as it is "acting under a federal officer" by engaging in the conduct giving rise to this lawsuit. (*Id.* at ¶¶ 54-59.)

Unsurprisingly, following removal, Doe filed a motion to remand, arguing that Gundersen's voluntary participation in the Meaningful Use Program does not create a basis for removal under § 1442(a)(2).

OPINION

The federal officer removal statute "permits the removal of cases in which a federal agency or officer, or 'any person acting under that officer,' is a defendant." *Martin v. Petersen Health Operations*, LLC, 37 F.4th 1210, 1212 (7th Cir. 2022). "Federal officer removal is appropriate when 'the defendant (1) is a person within the meaning of the

3

statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense.'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)). However, a party must satisfy all four requirements of § 1442(a)(1) to remove the case to federal court under this statute. *Totten v. Crane Co.*, No. 13-C-8157, 2014 WL 1689689, at *3 (N.D. Ill. Apr. 28, 2014). Further, the party removing bears the burden of establishing federal jurisdiction, although the U.S. Supreme Court "has made clear that courts must liberally construe § 1442(a)." *Betzner*, 910 F.3d at 1014.

Plaintiff does not dispute that Gundersen is a "person" under the statute but argues it has not met the burden of showing that Gundersen is acting under a federal officer's or agency's authority by creating and maintaining its patient portal. *See Baker*, 962 F.3d at 942 (the "relevant relationship . . . is that of a private person '*acting under*' a federal 'officer' or 'agency'"). Generally, the relationship of a private person acting under a federal officer or agency generally "involves subjection, guidance, or control" *and* "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151-52 (2007)). More to the point here, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153. This "is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* Accordingly, "regulation by federal officers or agencies differs from 'acting under' federal officers or agencies." *Martin*, 37 F.4th at 1213; *see also Betzner*, 910

4

F.3d at 1015 ("merely being subject to federal regulations or performing some functions that the government agency controls is not enough to transform a private entity into a federal officer").

Nevertheless, Gundersen claims to be acting under such authority by helping the federal government pursue its goal of having healthcare providers make health information more easily available to patients online. Unfortunately for Gundersen, multiple district courts, including several in this circuit, have already considered whether a private health care provider's facilitation and voluntary maintenance of an online patient portal to access health records is sufficient to support removal of a state lawsuit to federal court under § 1442(a)(1). So far, but for a few early outliers, the vast majority have concluded that participating in the Meaningful Use Program is not enough to form a basis for federal officer removal. *E.g.*, *Whitaker-Pine v. Bd. of Trustees,* 2024 WL 448918 (S.D. Ind. Feb. 6, 2024); *Doe v. Washington Township Health Care Dist.*, 2023 WL 8438564 (N.D. Cal. Dec. 5, 2023); *Chiaro v. Methodist Hospitals, Inc.*, 2023 WL 8254537 (S.D. Ind. Nov. 29, 2023); *Fleece v. Bd. of Trustees*, 2023 WL 8856703 (S.D. Ind. Nov. 17, 2023); *Doe v. Sarah Bush Lincoln Health Center*, 2023 WL 7690179 (C.D. Ill. Nov. 13, 2023); *Gibson v. Stanford Health Care*, 2023 WL 7413337 (N.D. Cal. Nov. 9, 2023); *Doe v. Valley Health System, Inc.*, 2023 WL 6997301 (D. New Jersey Oct. 24, 2023); *Lamarr v. Goshen Health Sys. Inc.*, 2023 WL 6690582 (S.D. Ind. Oct. 12, 2023); *Doe v. SSM Health Care Corp.*, 2023 WL 5662099 (E.D. Mo. Aug. 22, 2023); *Doe v. Mosaic Health System*, 2023 WL 5125078 (W.D. Mo. July 20, 2023); *Progin v. UMass Memorial Hospital*, 2023 WL 4535129 (D. Mass. July 13, 2023); *Martin v. LCMC Health Holdings, Inc.*, 2023 WL 4540547 (E.D. La. July 5, 2023);

*Beauford v. Johns Hopkins Health Sys. Corp.*, 2023 WL 4237373 (D. Maryland, June 28, 2023); *Doe v. Hoag Memorial Presbyterian Hospital*, 2023 WL 3197716 (C.D. Cal. May 2, 2023); *Doe v. Torrance Memorial Medical Center*, 2023 WL 2916548 (C.D. Cal. Apr. 12, 2023); *Mohr v. Trustees of the University of Pennsylvania*, 2023 WL 3044594 (E.D. Pa. Apr. 20, 2023); *Browne v. Cedars-Sinai Health System*, 2023 WL 3095551 (C.D. Cal. Apr. 26, 2023); *Heard v. Torrance Memorial Medical Center*, 2023 WL 2475544 (C.D. Cal. Mar. 13, 2023); *Quinto v. Regents of the University of California*, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023); and *Doe v. BJC Health System*, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023); *but see Doe v. ProMedica Health System*, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020); *Doe I v. UPMC*, 2020 WL 4381675 (W.D. Pa. July 31, 2020).[3]

    The court finds persuasive this line of cases. Particularly persuasive is the Southern District of Indiana in *Lamarr*. In that case, as here, the plaintiff alleged that a website-tracking code embedded in the defendant hospital's patient portal shared her health data without her consent. The defendant in *Lamarr* removed the case to federal court under the federal officer removal statute, arguing that "it 'act[ed] under' a subdivision of the U.S. Department of Health and Human Services by creating an online patient portal that satisfied the criteria for Medicare incentive payments." 2023 WL 6690582, at *1. However, the district court granted plaintiff's motion to remand the case.

---

[3] Although some of these rulings have been appealed, no appellate court has yet ruled on the issue as of the date of this opinion and order. *E.g.*, *Washington Township*, 2023 WL 8438564 (appeal pending in the Ninth Circuit); *Chiaro*, 2023 WL 8254537 (appeal pending in the Seventh Circuit); *Valley Health*, 2023 WL 6997301 (appeal pending in the Third Circuit); *SSM Health*, 2023 WL 5662099 (appeal pending in the Eighth Circuit); *Martin*, 2023 WL 4540547 (appeal pending in the Fifth Circuit).

In doing so, the *Lamarr* court acknowledged the United States Supreme Court's suggestion that a private contractor *may sometimes* be acting under the federal government when "helping the Government to produce an item that it needs." *Id.* at *2 (quoting *Watson*, 551 U.S. at 153). The district court also discussed how, "at least in some [Seventh Circuit] cases, then—in particular, those where a wartime manufacturer is making goods under contract for the U.S. government—'private contractors performing tasks for the government are sometimes covered under section 1442.'" *Id.* (quoting *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016)). Still, the district court explained "it is possible to 'take this idea too far[,]'" as "[o]nly those contractor relationships that are 'closely monitored and highly regulated' satisfy the 'acting under' requirement." *Id.* (quoting *Panther Brands*, 827 F.3d at 590).

As a counterexample, the *Lamarr* court cited to a case where the Seventh Circuit held that a nursing home seeking Medicare reimbursement fell "into the highly-regulated-but-not-acting-under category." *Id*. (quoting *Martin*, 37 F.4th at 1213). Not surprisingly, the *Lamarr* court found the defendant hospital before it was "more like the nursing home . . . than like the wartime contractors" because its patient portal is not something the government "needs," nor is the maintenance of electronic health records a "basic governmental task." *Id*. In particular, the court explains that because the defendant hospital was "exactly what it looks like: a private hospital. And '[p]rivate firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules,'" *id.* (quoting *Martin*, 37 F.4th at 1213), federal officer removal was not appropriate under 28 U.S.C. § 1442(a)(1).

The very same reasoning applies here. Gundersen's participation in the Meaningful Use Program may support the government's broad goal for patients to have online access to their medical records, but this is decidedly not a *basic governmental function*. Neither is Gundersen's portal a product that the government needs, nor is it otherwise fulfilling a basic governmental task. Although Gundersen would not be eligible for certain government payments if it had not developed the patient portal, and although the Meaningful Use Program proscribes guidelines for participants and requires reports to assess compliance, it is also a *voluntary* program and Gundersen's actions do not go "beyond simple compliance." *Watson*, 551 U.S. at 153. Thus, there is *no* indication that the government outsourced or delegated the creation of a patient portal to Gundersen, nor that it compelled or intended for Gundersen to do so. Accordingly, Gundersen has not shown that the federal government exercised the type of tight control that would bring its conduct within the statute's scope. *See Progin*, 2023 WL 4535129, at *4 (comparing *Watson*, 551 U.S. at 156 (the FTC's provision of testing specifications, inspection and supervision of the testing laboratories, and prohibition of statements in advertising were merely regulations that did not constitute formal delegation), with *Camacho v. Autoridad de Telefonos de P.R.*, 868 F.2d 482, 486 (1st Cir. 1989) (defendants were acting under the federal government because they "were acting under express orders, control and directions of federal officers" when wiretapping)).

 In contrast to a rapidly emerging consensus view of federal courts, Gundersen asks this court to adopt the reasoning of two of the first district courts to consider the issue in *ProMedica Health* and *Doe I*. In *Doe I*, the district court denied the plaintiff's motion to

8

remand, finding that "[t]he fact that the government offers payment in exchange for [defendant's] voluntary participation" is enough to establish that the relationship between the defendant and the federal government is "less like [a] regulator-regulated relationship" and "more like [a] government contractor relationship[.]" 2020 WL 4381675, at *6. Relying on *Doe I*, the district court in *ProMedica Health* reached a similar conclusion. 2020 WL 7705627, at *2-3 (defendant satisfied the "acting under" requirement by helping the government achieve its goal of creating a "unified system of patient electronic health records" in exchange for incentive payments). However, like other courts that have rejected the reasoning in these two early, divergent opinions, this court agrees that both *Doe I* and *ProMedica Health* adopted "an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which would permit removal to federal court in circumstances far beyond anything Congress intended." *Quinto*, 2023 WL 1448050, at *3 (N.D. Cal. Feb. 1, 2023) (citation and quotations omitted); *see also Sarah Bush Lincoln Health Center*, 2023 WL 7690179, at *6 (distinguishing and declining to follow *ProMedica Health* and *Doe I*). Indeed, if the fact that the government merely provides incentive payments for the voluntary participation in the Meaningful Use Program were sufficient to create a contractor relationship, "'the federal officer removal statute would sweep into the federal courts' countless cases involving private entities' receipt of incentive payments or incorporation of practices 'consistent with a policy promoted by the federal government as socially desirable.'" *Progin*, 2023 WL 4535129, at *4 (quoting *Doe v. Cape Cod Healthcare, Inc.*, No. 23-cv-10080, ECF No. 10 (D. Mass. Jan. 25, 2023)). Similarly, therefore, this court declines to follow the reasoning in *ProMedica Health* and *Doe I*.

9

Because Gundersen has failed to show that it was "acting under" the government has thus failed to show all four requirements for removal under 28 U.S.C. § 1442(a)(1), removal is not appropriate under that statute. Accordingly, the court will grant plaintiff's motion and remand this case to state court.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion to remand to state court (dkt. #9) is GRANTED.

2) The clerk of court is directed to REMAND this case to the Circuit Court for La Crosse County.

Entered this 8th day of February, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge